Sweeney, J.
The plaintiff, Linda Hopkins, brought this action against Liberty Mutual Insurance Company (“Liberty”), alleging unfair settlement practices in violation of G.L.c. 176D, §3(9)(f) and G.L.c. 93A. On August 4, 1998, this court issued a memorandum of decision finding that the defendant had engaged in unfair settlement practices as claimed by the plaintiff, which caused her damages in the amount of Eighty-Three Thousand Seven Hundred Thirty-Three ($83,733) Dollars. In addition, the defendant was assessed punitive damages in the amount of One Hundred Sixty-Seven Thousand Four Hundred Sixty-Six ($167,466) Dollars. The defendant was ordered to pay the reasonable attorneys fees and costs incurred by the plaintiff in prosecuting her 93A claim.[1]
On August 20, 1998, the plaintiff filed her Affidavit of Services and Fees seeking $18,670.21. On August 28, 1998, the defendant filed an objection on the grounds that plaintiff was entitled only to those attorneys fees attributable to her G.L.c. 93A claim, and not those attributable to the underlying tort claim against Liberty’s insureds. The court conducted a hearing on the issue and reviewed memorandums submitted by the parties.
As detailed in the court’s original memorandum of decision, on February 7, 1992, the plaintiff was seriously injured in a multi-car accident on East Street in Pittsfield, Massachusetts. Robert Jones, who was operating a truck owned by Tire Center Incorporated (“Tci”), was involved in the accident. Liberty Mutual insured both Mr. Jones and TCI at the time of the accident. Investigations clearly indicated that the accident was caused, in part, by Jones following too closely behind another vehicle that struck Ms. Hopkins’ car. On October 14, 1994, after updating Ms. Hopkins’ medical bills, her attorney presented to Liberty a settlement demand of Seven Hundred Thousand ($700,000) Dollars. By December 1994, both TCI and Jones were clearly liable and Ms. Hopkins’ damages were reasonably established.
Liberty nonetheless declined to offer a settlement and Ms. Hopkins’ lawyers sent a 93A demand letter to Liberty on December 29, 1994. No offer was received and the plaintiff filed this lawsuit on February 2, 1995.
*107 The complaint alleged negligence against TCI, Jones, and other drivers and sought damages for injuries sustained in the accident. Count VI of the complaint alleged that Liberty violated both Chapter 176D and Chapter 93A of the General Laws and sought damages under 93A.
Liberty’s first settlement offer, on behalf of TCI and Jones, was not made until April 24, 1996, when it offered a combined settlement of Four Hundred Thousand Dollars contingent upon the plaintiff releasing all the defendants. The plaintiff rejected this offer, and on August 21, 1996, TCI and Jones made the plaintiff an Offer of Judgment in the amount of Four Hundred Thousand ($400,000) Dollars, which plaintiff accepted, thereby releasing TCI and Jones, but reserving her 176D and 93A claims against Liberty. Those claims were tried before this court jury-waived in July 1998, and resolved in Ms. Hopkins’ favor. Liberty was accordingly ordered, among other things, to pay the reasonable attorneys fees incurred in prosecuting Ms. Hopkins’ 93A claims against Liberty. That order is the sole issue before the court for resolution.
The plaintiffs attorney submitted an Affidavit of Counsel for Services and Fees totaling 115.7 hours, including time spent both on Ms. Hopkins’ personal injury claim, which was ultimately settled, and her 93A claim. Liberty objects to the affidavit on the grounds that (1) Ms. Hopkins’ attorney represented her on a contingent fee basis, which she was obligated to pay regardless of when the case settled and (2) Ms. Hopkins’ 93A action was separable from her personal injury claim, with a total of 45.8 hours attributable to the 93A claim. Her attorneys fees, Liberty argues, should be limited to those attributable to her 176D and 93A claims.
The amount of a reasonable attorneys fee is largely discretionary, and the judge should consider “the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.” Linthicum v. Archambault, 379 Mass. 381, 388-89 (1979). Section 9(4) of G.L.c. 93A authorizes the award of legal fees “incurred in connection with said action” (i.e. the action under Chapter 93A), but not for other actions. Miller v. Risk Management, 36 Mass.App.Ct. 411, 421 (1994). In Miller, the plaintiff pursued a 93A claim subsequent to the conclusion of a malpractice action, alleging unfair settlement practices in the business of insurance, G.L.c. 176D, based upon the company’s failure to make a reasonable offer of settlement where liability of the hospital appeared plain. See id. at 412. The trial judge concluded that attorneys fees for the work done on the Millers’ behalf in the malpractice action were recoverable in the 93A suit. See id. at 421. The Appeals Court found that the trial judge had applied the customary factors, such as hours spent, reasonable hourly rates, and the results obtained, and that the figures reached by the judge could therefore be justified. See id. The court remanded the case, however, since the judge’s award could have been read differently. See id.
Although the trial judge in Miller found that the expense of the malpractice action was a foreseeable consequence of the defendant’s unfair or deceptive act or practice, the plaintiffs retained the attorney on a contingency fee basis, with the plaintiffs obligated to pay the attorney one third of the amount collected and reasonable expenses. See id. The plaintiffs’ additional expense in litigating the malpractice claim, rather than receiving an early settlement, “was only in the way of expenses and disbursements occasioned by the litigation.” See id. The Appeals Court accordingly remanded the case for recomputation or reconsideration. See id. at 423.
In the negligence claim against Liberty’s insured, Ms. Hopkins’ attorney represented her on a contingency fee basis. To require Liberty to pay the same attorney fees that Ms. Hopkins was contractually obligated to pay her attorney, regardless of whether a later bad faith claim arose against Liberty, would result in a windfall to the plaintiff.[2]
The plaintiff argues that her 93A claims are inseparable from the common law tort claim underlying this case, pointing to case law where attorneys fees for the underlying action were held recoverable without differentiating the 93A claims. Those cases, unlike the case at bar, involved fact patterns where underlying common law claims themselves constituted the unfair or deceptive trade practices under the statute. See DiMarzo v. American Mutual Ins. Co., 389 Mass. 85, 106 (1983) (holding that separate counts of a complaint alleging 93A violations represented elements of damage arising from a single chain of events where a plaintiff was injured both individually and as American Mutual’s insured’s assignee when American Mutual failed to offer a reasonable settlement under the insurance contract); Simon v. Solomon, 385 Mass. 91, 111 (1982) (holding that the attorneys fees incurred in pursuing a plaintiffs emotional distress claims need not be severed from plaintiffs statutory claims where the various elements of damage arose from “a single chain of events” — flooding the plaintiffs apartment); Hanover Ins. Co. v. Sutton, 46 Mass.App.Ct. 153, 177 (1999) (holding that separate counts in an action for breach of fiduciary duty in violation of 93A involved a common core of facts and that the hours attributable to the 93A claim thus need not be apportioned). Liberty Mutual violated 176D and 93A when it acted in bad faith in failing to reasonably settle this claim, which is separate from the underlying common law claim in this case, namely, negligence on the part of Liberty’s insureds.
*108 The court accordingly finds that attorneys fees and costs are to be apportioned to hours spent on the 176D and 93A claims and shall include the following: 11.3 hours prior to settlement of the underlying tort claim, 3.1 hours between February 13, 1997 and April 11, 1997, and 32.5 hours in preparation for trial, attending trial, and post-trial matters, for a total of 46.9 hours.[3] Despite defendant’s argument, Mr. Cianflone’s preparation time and trial time were reasonable and obviously successful. Attorney Cianflone has been an active and respected trial attorney for more than sixteen years. His hourly fee of $150 dollars is consistent with rates charged by attorneys in Berkshire County during the time frame of this case and is a conservative rate when viewed in light of Mr, Cianflone’s experience, reputation and actual work product in this case. The plaintiff is entitled to recover costs in the amount of $455.34, representing the $185 filing fee and the $270.34 stenographic cost for the Ostrander deposition.

ORDER

For the reasons set forth in the memorandums of decision, it is ordered that final judgment enter for the plaintiff as follows:
1. The defendant is to pay the plaintiff actual damages in the amount Eighty-Three Thousand Seven Hundred Thirty-Three ($83,733) Dollars, with statutory interest of 12% thereon from the date of the filing of this action.
2. The defendant is to pay the plaintiff punitive damages in the amount of One Hundred Sixty-Seven Thousand Four Hundred Sixty-Six ($ 167,466) Dollars, with statutory interest of 12% thereon from the date of the entry of this judgment.
3. The defendant is to pay the plaintiff her attorney fees in the amount of Seven Thousand Thirty-Five ($7,035) Dollars, with statutory interest of 12% thereon from the date of the entry of this judgment.
4. The defendant is to pay the plaintiffs costs in the amount of Four Hundred Fifty-Five Dollars and Thirty-Four Cents ($455.34), with statutory interest of 12% thereon from the date of the entry of this judgment.

In the August 1998 Memorandum of Decision, the $400,000 settlement of the underlying tort claim appears as a fragment in the order of judgment. Its inclusion in the order was a scrivener’s error.

The plaintiffs losses with regard to her delayed receipt of damages was adequately remedied in the judgment of $83,733.00, representing the costs and expenses she incurred as a result of Liberty’s unfair and deceptive settlement practices, which was trebled.

Some portions of the plaintiffs affidavit appear to list some limited hours conceivably attributable to both the plaintiffs underlying tort claim and her 93A claim. With respect to those overlapping hours, the plaintiff has not offered the court any meaningful guidance on separating those hours in order to attribute them to the appropriate claim. Thus, I decline to include those hours in the plaintiffs recovery of attorneys fees. See Hensley v. Ekerhart, 461 U.S. 424 (1983).