Brady, J.
Following a three-day juiy-waived trial I found in favor of the plaintiff on its suit for injunctive relief and on April 10, 2003 entered judgment enjoining the defendants from conducting rug liquidation sales until October 6, 2004 [16 Mass. L. Rptr. 420). Pursuant to G.L.c. 93A, I indicated that I would award costs, attorneys fees and expert witness fees to the plaintiff. Thereafter plaintiff submitted an application for fees and costs which was opposed by defendants. I held a hearing on the plaintiffs application on July 24, 2003. After consideration of the parties’ written submissions and oral argument I conclude that the fees and costs sought by the plaintiff are fair and reasonable. I therefore award $233,121.94 as specified in plaintiffs Verification of Attorneys Fees, Witness Fees and Costs. My reasons follow.
I presided over this case from the day it was filed and a temporary restraining order sought through trial. Accordingly I have substantial familiarity with the entire case, the legal and factual issues which the case presented, the courtroom advocacy by counsel, and the written motions and briefs filed by counsel. Counsel for both sides were required by the expedited schedule to condense preparation that in the typical so-called fast-track case occurs in approximately 18 months into two months. The case was very important to the parties, because at least in plaintiffs view the defendants were misappropriating confidential information that had taken years to acquire and was at the heart of its business. Plaintiffs attorneys were required to act promptly in seeking an injunction, which they obtained, which effectively prevented the defendants from unlawfully appropriating plaintiffs confidential information. Trial was expedited primarily for the benefit of defendants, who of course stood to lose substantial profits from rug sales if the case plodded along on a slow track.
My memorandum of decision noted the attorneys’ admirable cooperation in discovery matters. It is noteworthy that no time was wasted coming to court for relief from obstructionist or dilatory discovery behavior. The depositions taken by the parties (12 by plaintiff; eight by defendants) were necessary and appropriate. Plaintiff chose to be represented by a larger firm with more resources. Thus several attorneys from the Postemak firm contributed to the work in the case beyond the trial lawyers, Rosanna Sattler and Danielle Cannito. None of the work accounted for in the attorneys’ billings strikes me as superfluous or unnecessary.
The bills are detailed. I am able readily to understand the work done by the individual lawyer, and the reason for the work in the context of the case. I am informed that the plaintiff was prompt in paying the bills, and to date has paid approximately $140,000.
To some extent the plaintiffs attorneys may have overprepared the case, but this does not detract from the reasonableness of the fees and costs. In this judge’s experience, most successful lawyers over-prepare. Trial counsel must be able to adjust; it is *608 better to anticipate and prepare for situations that do not arise than to be caught unaware.
Plaintiffs counsel’s bills were discounted 20% from the Posternak firm’s usual and customary rates. The discount benefits defendants. Plaintiffs attorneys have not sought a “bonus” due to their success.
The core legal issues in the case were not novel or unusual. Most judges are familiar with the basic case law in the area of non-compete/confidential information litigation. The factual scenario, however, was not uncomplicated. The defendants, after all, were not exactly open and above board in their concerted activity to “copy” plaintiffs business. The evidence of their misbehavior had to be and was dug out by the efforts of plaintiffs attorneys.
Defendants raised a serious and plausible issue whether the noncompetition contract between plaintiff and Arsalen was forged. If they could have proved that, the case would have come out differently. On this issue the parties presented handwriting experts who reached different conclusions. Although I as trial judge ultimately saw the plaintiffs case as “overwhelming,” it was hardly a slam dunk which any first-year lawyer could have won merely by showing up on time. The case proved to be strong through the hard and effective work of plaintiffs attorneys.
The plaintiffs attorneys could simply have presented their application for fees and costs and relied on this judge’s experience in evaluating such requests. They went beyond that, however, in having the application reviewed by J. Owen Todd, Esq., a veiy experienced and well-known trial lawyer and former Justice of the Superior Court. Mr. Todd’s affidavit strongly supports the reasonableness of the time spent, and the hourly rates charged.
Linthicum v. Archambault, 379 Mass. 381, 388 (1979), sets out the factors the court should take into account in a fee award. I have considered and apply those factors. The only factors which do not, strictly speaking, apply are the amount of damages involved and the amount of awards in similar cases. The reason the case did not result in damages for the plaintiff was because its attorneys acted so promptly and effectively in obtaining a preliminary injunction. Moreover, the plaintiff successfully resisted defendants’ attempts to secure damages for themselves on the theory that the plaintiff fraudulently obtained injunctive relief.
Defendants raise two additional points which I will address. First, defendants argue that any award of fees and costs should not be joint and several, but should be apportioned on an equitable basis. Defendants Mamane, Reed and Allied, now represented by different counsel from Arsalen, would put the lion’s share of culpability on Arsalen who most likely is judgment proof. I do not agree that there is any basis for equitable apportionment. The defendants are joint tortfeasors. Each of the three individual defendants, Arsalen, Reed, and Mamane, were equally important to the scheme; without any one of them, the malfeasance would not likely have occurred. The defendants are jointly and severally liable for the fees and costs.
Second, defendants contend that the award should be reduced by 2/7 because 2 of plaintiffs counts (conversion, constructive trust) were not pressed at trial. This is of no consequence. It is common for attorneys to plead causes of action which are later waived at trial. The time, labor and costs would have been the same regardless of these counts.
ORDER
The plaintiffs application for attorneys fees, witness fees and costs in the amount of $233,121.94 is allowed.